UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────x
                                   :
MOHAMMAD LADJEVARDIAN, et al.,     :   06 CIV. 3276 (TPG)
                                   :
            Plaintiffs,            :
                                   :
    vs.                            :
                                   :
THE REPUBLIC OF ARGENTINA,         :
                                   :
            Defendant.             :
                                   :
──────────────────────────────────x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR WRIT OF EXECUTION
AND FOR TURNOVER ORDER AGAINST THE REPUBLIC OF
<u>ARGENTINA AND THE BANK OF NEW YORK MELLON CORPORATION</u>**

                                            ANDERSEN SLEATER LLC
                                            Jessica J. Sleater
                                            1345 Ave. of Americas
                                            2nd Floor, Suite 2100
                                            New York, NY 10105

Plaintiffs in above captioned action ("Plaintiffs"), having obtained civil money judgments rendered by this Court ("Judgments") against defendant, the Republic of Argentina ("Argentina"), respectfully submit this memorandum in support of their motion for issuance of writs of execution and a turnover order against Argentina and The Bank of New York Mellon ("BNYM").

## PRELIMINARY STATEMENT

Plaintiffs move, pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, 28 U.S.C. Section 1610 (a) and (c), and Sections 5225(b) and 5230 of the New York Civil Practice Law and Rules, for immediate issuance of writs of execution and an order directing Argentina and BNYM, as Settlement Trustee, to turn over the additional proceeds from Argentina's commercial $16.5 billion bond offering - not to be used to pay the settlements agreed to by bondholders ("2016 Bond Offering") - held in the U.S. to satisfy their long-outstanding Judgments plus post-judgment interest and legal fees.

## BACKGROUND

Plaintiffs, who are family members, purchased bonds from Argentina, some in the 1990s at par-value, with a current principle value of about $13 million (the "Bonds"), based on the expectation that they were a safe, stable investment, and that they would be able to use the interest to help pay their living expenses. *See* Declaration of Jessica J. Sleater ("Sleater Decl."), ¶ 2, Exhibit ("Ex.") B (list of current holdings information). Plaintiffs purchased some of the Bonds **before** Argentina's default in 2001 and **ahead of its two-decade-long** recalcitrance of its obligations to pay bondholders, including Plaintiffs. *Id*. at ¶ 3. Because of this, Plaintiffs were forced to expend a considerable amount on legal fees to secure this Court's judgment against Argentina, which based on post-judgment interest that continues to accrue is close to $56 million (the "Judgments"). *Id*. at ¶¶ 4-5; Ex. A (Court's Judgment on June 15, 2007; docket ("Dkt.") 17).

1

In February 2016, for the first time since its 2001 default, Argentina indicated a willingness to pay some its creditor bondholders. *Id*. at ¶¶ 8. On February 17, 2016, it announced a unilateral, take-it-or-leave-it public offer to the outstanding bondholders of 150% of principle or 70% of claims to bondholders with injunctions (the "Public Offer"). *Id*. Because Plaintiffs did not have injunctions, despite securing their Judgments in 2007, Argentina continues to only offer them 150% of principle for their Bonds. *Id*. Argentina did not communicate with any individual bondholders ahead of announcing the Public Offer and continues to refuse to consider adequately compensating them for anything other than the Public Offer's terms despite Plaintiffs' repeated attempts to negotiate with it. *Id*.

Even though Plaintiffs' Bonds contain a *pari passu* clause entitling them to equal payments to other bondholders, Argentina has decided **not** to treat Plaintiffs and other bondholders equally. *Id*. at ¶¶ 9. On February 29, 2016, Argentina reached a settlement with NML Capital Ltd. ("NML") regarding its bonds entitling NML to **79% of its claims** on its $5.89 billion in bonds (or 75% of its claims plus payment of $235 million in legal fees and expenses) amounting to about 369% of their bonds principle, which is a far cry from the 150% of principle that Argentina is offering Plaintiffs. *Id*. In connection with this settlement and with other bondholders, on March 15, 2016, this Court ordered a settlement payment mechanism, as agreed to by those parties in "Addendum A," requiring Argentina to notify those plaintiffs of any attempt by any creditor of Argentina "to place a lien upon, encumber or otherwise attach the proceeds of any capital raise or to so enjoin such capital raise," to be used to pay the settlements, which would apply to the 2016 Bond Offering. *Id*. at ¶ 11; (C.A. No. 1:08-cv-06978-TPG, Dkt. 922, Addendum A, section H.).

After the Court of Appeals affirmed this Court's Order lifting the injunctions on Argentina on April 13, 2016 (C.A. No. 16-628, Dkt. 561), Argentina began taking steps toward making its $16.5 billion private bond offering ("2016 Bond Offering"), $10.5 billion of which will be used to pay the settlements with certain bondholders, including NML (the "Settlements"). *Id*. at ¶¶ 10. Government officials from Argentina, including Finance Secretary Luis Caputo, traveled to the U.S., as part of its "roadshow" for the 2016 Bond Offering, to meet with U.S. investors. Argentina also disclosed that Deutsche Bank AG, HSBC Holdings Plc, JPMorgan Chase & Co., and Banco Santander SA are global coordinators for the 2016 Bond Offering, and Banco Bilbao Vizcaya Argentaria SA, Citigroup Inc., and UBS Group AG are joint bookrunners. *Id*. Argentina is currently generating proceeds from the commercial transactions of the 2016 Bond Offering, in excess of those needed to pay the Settlements, through U.S. financial institutions, including BNYM. *Id*.

On April 22, 2016, attorneys for Argentina indicated to the Court that it had made full payment through the 2016 Bond Offering to pay the bondholders, who had agreed to settlements with Argentina before February 29, 2016. (C.A. No. 1:08-cv-06978-TPG, Dkt. 936). In connection with that filing, Argentina provided a declaration from Matthew Dukes, Director and officer of Deutsche Bank Securities Inc. ("DB") that acted as billing and delivery bank for the 2016 Bond Offering. (*Id*. at Declaration of Matthew Dukes ("Dukes Decl.")). Exhibit A to that declaration was the Purchase Agreement that indicated that the initial purchasers were all New York-based entities of the previously revealed financial institutions. Sleater Decl. at Exhibit C at pg. 1. Schedule 2 to the Purchase Agreement revealed that BNYM "in its capacity as Settlement Trustee under that certain Settlement Trust Agreement dated as of April 22, 2016" was assigned to receive $975,496,855.30 of the 2016 Bond Offering proceeds. *Id*. at Ex. C at p. 43. Based on

satisfaction of the conditions, the Court lifted the orders against Argentina. (C.A. No. 1:08-cv-06978-TPG, Dkt 937).

Based on fairness and equity to the remaining non-settling bondholders, who have been deprived of a genuine opportunity to negotiate with Argentina ***and*** still hold Bonds with *pari passu* clauses requiring equal payments to other bondholders, including NML, Plaintiffs are now seeking to enforce their Judgments with issuance of writs of execution and a turnover order of Argentina's proceeds from the 2016 Bond Offering in the U.S. at BNYM that is not being used to pay Settlements in order to receive the amounts that they are rightfully owed from Argentina.

**ARGUMENT**

**I.     The Court has Jurisdiction**

Plaintiffs seek to enforce this Court's Judgments against Argentina by requesting that BNYM, as "Settlement Trustee," turn over Argentina's proceeds from the 2016 Bond Offering - not to be used to pay Settlements - to Plaintiffs to satisfy their Judgments. Federal courts may consider post-judgment motions, such as this, pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 5225 and 5230, under their ancillary jurisdiction. *See, e.g., Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001) (permitting post-judgment proceeding to collect judgment in hands of third party under the court's ancillary enforcement jurisdiction).

Under a motion pursuant to FRCP 69(a) and CPLR §§ 5225 and 5230, the court need only have personal jurisdiction over the garnishee or entity other than the judgment debtor that possesses property in which the judgment debtor has an interest. *See JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 592 (S.D.N.Y. 2011) (citation omitted) (court with personal jurisdiction over defendant may order it to turn over out-of-state property regardless of whether defendant is judgment debtor or garnishee). Under FRCP 4(k), a federal court has personal jurisdiction over an entity that is subject to the jurisdiction of a court of general

4

jurisdiction in the state where the district court is located, here New York. Courts in New York, pursuant to CPLR § 301, may exercise jurisdiction over a corporation where it is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *See JW Oilfield*, 764 F. Supp. 2d at 592.

Here, BNYM is a garnishee of Argentina because it is the "Settlement Trustee" of its 2016 Bond Offering proceeds, and as such, is responsible for holding the proceeds from sales to Argentina owed to bondholders, including those who have not settled, like Plaintiffs. BNYM is a U.S. corporation, headquartered at 225 Liberty Street, New York, New York 10286, in this district, as identified in its recent Securities and Exchange Commission public filings. BNYM, Form 8-K, filed April 21, 2016, http://phx.corporate-ir.net/phoenix.zhtml?c=87345&p=irol-SECText&TEXT=aHR0cDovL2FwaS50ZW5rd2l6YXJkLmNvbS9maWxpbmcueG1sP2lwYWdllPTEwODgyNTI0JkRTRVE9MCZTRVE9MCZTUURFU0M9U0VDVElPTl9FTlRJUkUmc3Vic2lkPTU3 (last visited April 27, 2016). BNYM has previously appeared in connection with related bondholder litigation regarding its holdings of Argentina's funds. (*See, e.g.*, C.A. No. 1:07-cv-00098-TPG, Dkt. 97). BNYM is a citizen of New York for jurisdiction purposes. *See Bank of New York Mellon v. Bell*, No. 3:11-CV-1255 JAM, 2014 WL 7270232, at *6 (D. Conn. Dec. 18, 2014) (finding complete diversity of citizenship because "Plaintiff Bank of New York Mellon, as Trustee for BS Alt A 2005–9, is a citizen of New York, being organized in New York and having its principal place of business in New York"). Therefore, there is no dispute that this Court has personal jurisdiction over BNYM.

## II.  Plaintiffs are Entitled to Relief Requested

FRCP 69(a) provides for a money judgment, like Plaintiffs' Judgements, to be enforced by a writ of execution and the procedure on execution and supplementary to it be in accordance with the procedures of the state where the court is location. Plaintiffs move for issuance of writs

5

of execution of their judgments pursuant to CPLR § 5230 and a turnover order pursuant to CPLR § 5225. Courts in this District permit judgment creditors seeking a turnover order against someone other than the judgment debtor to file a motion for writ of execution and turnover order. *JW Oilfield*, 2011 WL 507266, at *2.

>CPLR § 5230(b) provides that:
>
>At any time before a judgment is satisfied or vacated, an execution may be issued from the [court] in the county in which the judgment was first docketed, by the clerk of the court or the attorney for the judgment creditor as officer of the court, to the sheriffs of one or more counties of the state, directing each of them to satisfy the judgment or order out of the real and personal property of the judgment debtor or obligor and the debts due to him or her.

Subsection (a) of CPLR § 5230 provides that the execution direct that only the property in which a named judgment debtor has an interest be levied upon. Plaintiffs specify that they seek only Argentina's proceeds from the 2016 Bond Offering at BNYM in the U.S. not to be used to pay Settlements.

>CPLR § 5225(b) provides that:
>
>Property not in the possession of the judgment debtor. Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court *shall require* such person to pay the money, or so much of it as is sufficient to satisfy the judgment to the judgment creditor.

(Emphasis added). Courts recognize that a special proceeding pursuant to CPLR § 5225 can be brought as a motion under FRCP 69(a), rather than instituting a special proceeding under New York state law. *See S.E.C. v. Colonial Inv. Mngt. LLC*, No. 07 Civ. 8849, 2010 WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2011); *JW Oilfield*, 2011 WL 507266, at *2 (recognizing the special proceeding is more akin to a motion). Courts recognize that the language of CPLR § 5225

6

dictates that if a judgment creditor can show that the judgment debtor is in possession of or entitled to money or property, a court must order payment or delivery. *See Samuels v. Samuels*, 473 N.Y.S.2d 436, 437 (1st Dep't 1984).

BNYM is the Settlement Trustee of the 2016 Bond Offering proceeds and does not have an interest in the proceeds for Argentina. Plaintiffs obtained money judgments from this Court that Argentina has failed to satisfy and therefore have a claim to the 2016 Bond Offering proceeds held by BNYM that are superior to BNYM's. As a result pursuant to CPLR § 5225(b), the Court is required to force BNYM to pay to Plaintiffs the money or so much as is sufficient to satisfy their Judgments.

### III.   The Property Sought Is Not Immune

Argentina's property identified in the motion seeking to be executed and turned over to Plaintiffs to satisfy their long-standing Judgments is not immune from attachment or execution under the Foreign Sovereigns Immunities Act ("FSIA"). Instead, the property falls under the exceptions to FSIA, under 28 U.S.C. § 1610(a), as property in the U.S. of Argentina used for commercial activity in the U.S. In its 1994 Fiscal Agency Agreement, under which it issued the Bonds, Argentina agreed to a broad waiver of its immunity from attachment and execution. 28 U.S.C. § 1610(a)(1) (property of a foreign state is not immune where it waived its immunity). Under FSIA, commercial activity is "either a regular course of commercial conduct or a commercial transaction or act" and is so "determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d); *see Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992) (recognizing that the nature of transaction determines if it is commercial activity and if it is the type private parties engage in trade, traffic or commerce). Commercial activity is considered the type that private parties carry on for profit. *De Letelier v. Republic of Chile*, 748 F.2d 790, 797 (2d Cir. 1984).

Here, there is no question that engaging in the 2016 Bond Offering constitutes "commercial activity," as an exception under FSIA from immunity. Private parties are in fact engaging in the 2016 Bond Offering for profit, not only as bond investors, but for the purpose of Argentina's desire to raise capital. Argentina's offering securities under the 2016 Bond Offering is clearly the type of activity that private parties, and Argentina itself, carry on for profit. Plaintiffs are not seeking any proceeds directed to bondholders' Settlements in which Argentina would not have an interest, and Plaintiffs would not have a superior interest in obtaining over other bondholders. Instead, Plaintiffs only identify in their motion Argentina's proceeds necessary to satisfy their Judgments and interest owed in *excess* of the amounts needed to pay bondholders' Settlements that it has indicated it will raise of at least an additional $6 billion from the $10 billion to be used to pay bondholders' Settlements.[1]

In addition to constituting commercial activity to reach the exemption to immunity under FSIA, the property or money identified in Plaintiffs' motion specifically are limited to those proceeds in the U.S. from the 2016 Bond Offering held by BNYM, a U.S. financial institution. Government officials of Argentina visited the U.S. specifically to speak to U.S. investors interested in engaging in commercial transactions with Argentina here. Although the 2016 Bond Offering was private, U.S. investors were the base of the purchasers through the U.S. entities demonstrating that commercial activity occurred in the U.S., and Argentina's proceeds are retained in the U.S. at BNYM, as identified in the Purchase Agreement, Schedule 2, sufficient to

---

[1] The Court's Order of the settlement payment mechanism (C.A. No. 1:08-cv-06978-TPG, Dkt. 922) would not apply to this motion as it does not seek any monies subject to Settlements that have already been paid. (C.A. No. 1:08-cv-06978-TPG, Dkt 937).

satisfy the Judgments.[2]  Financial Times, How Did Argentina Pull Off a $16.5bn Bond Sale?, https://next.ft.com/content/997554b6-06e6-9b51-0fb5e65703ce (last visited Apr. 26, 2016).

Finally, a reasonable period of time has elapsed following the entry of the Judgments pursuant to 28 U.S.C. § 1610(c) to order the execution and turn over order. Since June 15, 2007, when this Court entered the Judgments, Plaintiffs have not received any payments from Argentina nor been given the opportunity to participate in good faith negotiations regarding a potential resolution regarding them. It is clear that the proceeds of the 2016 Bond Offering sought by Plaintiffs in the writs of execution and turnover order are not immune under FSIA.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for issuance of writs of execution and order Argentina and BNYM to turn over the proceeds from 2016 Bond Offering that are not being used to pay Settlements in order to satisfy Plaintiffs' long-standing Judgments plus post-judgment interest and legal fees.

Alternatively, if the Court requires more information to identify the specific accounts with Argentina's proceeds in the U.S., Plaintiffs request that it allow them to proceed with discovery from Argentina and BNYM pursuant to FRCP 60(a)(2) and to renew their motion when they receive that information, and to restrain Defendant from removing those proceeds from U.S. banks based on notice of the present motion.

---

[2] This situation is unlike that confronted by this Court in *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715, 2010 WL 768874, at *4 (Mar. 5, 2010), where the securities transactions at Citibank occurred in Argentina. Here, the commercial transactions occurred in the U.S. between Argentine officials and U.S. investors and used BNYM, U.S. financial institution, as its Settlement Trustee to hold the proceeds for Argentina. The money sought here is also different to the transfer of Argentina's retirement funds that did not constitute property being used for commercial activity in *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120 (2d Cir. 2009). The 2016 Bond Offering is the sale of securities for Argentina's profit, held by BNYM, not only a transfer of assets.

Dated: April 29, 2016
      New York, New York

Respectfully submitted,

**ANDERSEN SLEATER LLC**

By: _Jessica Sleater_
Jessica J. Sleater
1345 Avenue of the Americas
2nd Floor, Suite 2100
New York, NY 10105
Tel: (212) 878-3697
Email: jessica@andersensleater.com

*Attorney for Plaintiffs*