UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
MOHAMMAD LADJEVARDIAN, et al.,                                    :
                                                                  :   06 Civ. 3276 (TPG)
                                    Plaintiffs,                    :
                                                                  :
                      - against -                                 :
                                                                  :
THE REPUBLIC OF ARGENTINA,                                        :
                                                                  :
                                    Defendant.                    :
                                                                  :
------------------------------------------------------------------X
                                                                  :
MICHELLE COLELLA, et al.,                                         :
                                                                  :   04 Civ. 2710 (TPG)
                                    Plaintiffs,                    :
                                                                  :
                      - against -                                 :
                                                                  :
THE REPUBLIC OF ARGENTINA, et al.,                                :
                                                                  :
                                    Defendants.                   :
------------------------------------------------------------------X


# MEMORANDUM OF THE REPUBLIC OF ARGENTINA IN OPPOSITION TO PLAINTIFFS' MOTIONS TO EXECUTE ON PROPERTY IN WHICH THE REPUBLIC HAS NO INTEREST

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Carmine D. Boccuzzi
Howard S. Zelbo
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Of Counsel*:
Kristin A. Bresnahan
Richard Freeman

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................1

BACKGROUND ...............................................................................................................3

    A.  The Republic's Issuance Of $9.372 Billion In Principal Amount
        Of Bonds For The Purpose Of Paying Settling Parties Did Not
        Create Property Subject To Execution.......................................................................4

    B.  The Republic's Issuance Of $7.128 Billion In Principal Amount
        Of Bonds, Which Took Place Wholly In Argentina, Did Not Create
        Property Subject To Execution...................................................................................7

    C.  The Present Motions ...................................................................................................8

ARGUMENT: PLAINTIFFS' TURNOVER MOTIONS MUST BE REJECTED ...................9

I.     Plaintiffs Have Failed To Identify Any Republic Property Subject To
      Execution Because BNYM And JPMorgan Possess No Property In
      Which The Republic Has An Interest.........................................................................9

    A.  JPMorgan Does Not Hold The Funds Targeted By Plaintiffs...................................9

    B.  The Property Targeted By Plaintiffs At BNYM Is Not Subject To
        Execution Because The Republic Has No Interest In That Property........................10

    C.  Plaintiffs' Motions For Turnover Otherwise Fail Under The FSIA.........................14

II.    Plaintiffs Are Not Entitled To Discovery ...................................................................16

CONCLUSION................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,
475 F.3d 1080 (9th Cir. 2007) ................................................................ 15-16

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)................................................................................ 14

*Aurelius Capital Partners, LP v. Republic of Argentina*,
584 F.3d 120 (2d Cir. 2009) ................................................................... 3, 15

*Aurelius Capital Partners, LP v. Republic of Argentina*,
No. 07 Civ. 2715 (TPG), 2010 WL 768874 (S.D.N.Y. Mar. 5, 2010) ............ 15

*Bass v. Bass*,
528 N.Y.S.2d 558 (1st Dep't 1988) ........................................................ 10

*Beauvais v. Allegiance Sec., Inc.*,
942 F.2d 838 (2d Cir. 1991) ................................................................... 10

*Dussault v. Republic of Argentina*,
616 F. App'x 26 (2d Cir. 2015) ............................................................. *passim*

*EM Ltd., et al. v. Banco Central de la República Argentina*,
800 F.3d 78 (2d Cir. 2015) ..................................................................... 2, 13

*EM Ltd. v. Republic of Argentina*,
473 F.3d 463 (2d Cir. 2007) ...............................................................10, 16, 17

*In re Sharp Int'l Corp.*,
403 F.3d 43 (2d Cir. 2005) ..................................................................... 13

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
313 F.3d 70 (2d Cir. 2002) ..................................................................... 10

*McManemy v. Roman Catholic Church of Diocese of Worcester*,
2 F. Supp. 3d 1188 (D.N.M. 2013) ........................................................ 16

Page(s)

*NML Capital, Ltd. v. Republic of Argentina*,
680 F.3d 254 (2d Cir. 2012) ............................................................. 14

*NML Capital, Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012) ............................................................. 14

*Rossini, et al. v. Republic of Argentina*,
453 F. App'x 22 (2d Cir. July 1, 2011) ............................................ 17

**Rules and Statutes**

28 U.S.C. § 1609 .............................................................................. 14-15

28 U.S.C. § 1610(a) ........................................................................... 15

N.Y. C.P.L.R. § 5223 ......................................................................... 17

N.Y. C.P.L.R. § 5225(b) ..................................................................... 11

N.Y. C.P.L.R. § 5230 ......................................................................... 11

Siegel, Practice Commentaries, N.Y. C.P.L.R. § 5223, C5223:2 (McKinney) ... 17

Siegel, Practice Commentaries, N.Y. C.P.L.R. § 5230, C5230:1 (McKinney) ... 11

**Other Authorities**

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ............ 14

Defendant the Republic of Argentina (the "Republic") respectfully submits this memorandum in opposition to the motions for writ of execution and for turnover against the Republic, JPMorgan Chase & Co. and The Bank of New York Mellon ("BNYM"), filed on April 26, 2016 and April 29, 2016 by plaintiffs in *Ladjevardian, et al. v. Republic of Argentina*, No. 06 Civ. 3276, and on May 2, 2016 against the Republic and BNYM by plaintiffs in *Colella, et al. v. Republic of Argentina*, No. 04 Civ. 2710 (together, the "Motions").

## PRELIMINARY STATEMENT

These Motions follow on the heels of the Republic's historic resolution of billions of dollars of judgments and claims pending in this Court that originated in connection with the Republic's 2001 economic and financial collapse.  Plaintiffs, judgment creditors of the Republic who have not accepted the Republic's settlement proposals, seek from J.P. Morgan Securities LLC ("JPMorgan")[1] and BNYM the turnover of purported Republic assets that are unidentified (and in fact non-existent) or otherwise are assets in which the Republic has no property interest and that cannot be seized consistent with state or federal law.  The Motions should be rejected out of hand.

*First*, while the Ladjevardian plaintiffs' original Motion seeks turnover from JPMorgan, the JPMorgan declaration being submitted with this opposition makes clear that JPMorgan *has no property of the Republic sought by the Motion*.  While the Motion appears directed to the funds raised by the Republic to pay settling creditors, JPMorgan is not involved with the settlement of any claims.  Only BNYM, as the Settlement Trustee, is involved in that process.  And as confirmed by JPMorgan, the role JPMorgan did play in the capital markets

---

[1] The Ladjevardian plaintiffs incorrectly named in their turnover motion JPMorgan Chase & Co., an entity with no involvement in these transactions.  Ladjevardian Apr. 26 Br. at 1.  Rather, it was J.P. Morgan Securities LLC that served as an Initial Purchaser of the Debt Securities offered by the Republic. Offering Memorandum at 218 (Ex. E); Decl. of Lisandro Miguens ¶ 1, May 11, 2016.  Unless otherwise indicated, exhibits are attached to the Declaration of Kristin A. Bresnahan, dated May 12, 2016.

transactions that occurred last month in connection with the historic settlement – namely, buying bonds issued by the Republic – did not result in JPMorgan holding any Republic property.

*Second*, the Motions should be rejected as to BNYM as well.  The money being held in the Settlement Trust is *not* property of the Republic. To the contrary, the Settlement Trust corpus is property in which the Republic has disclaimed any and all interest, so that the Second Circuit's holding in *Dussault v. Republic of Argentina*, 616 F. App'x 26, 27-28 (2d Cir. 2015) is on all fours with, and requires the rejection of, this latest turnover effort.  In *Dussault*, the Second Circuit affirmed this Court's denial of the turnover of assets held by BNYM in trust for exchange bondholders, holding that there could be no turnover of property to Republic judgment creditors where the Republic was not "entitled to possession" of the at-issue property held by BNYM.  So too here.  The money in the Settlement Trust is not the Republic's money, or money in which the Republic has any interest, but money held by BNYM in trust for settling creditors.  Indeed, plaintiffs explicitly disavow any claim to the money held in trust for settling creditors.  To the extent there may be some money remaining after settling creditors are paid, the Republic has no right to that money either – rather, the sole potential beneficiary of that money is the Central Bank of Argentina ("Banco Central de la República Argentina," or "BCRA"), also in its capacity as a creditor of the Republic.  BCRA is an entity that the Court of Appeals has ruled in *EM Ltd., et al. v. Banco Central de la República Argentina*, 800 F.3d 78 (2d Cir. 2015) is separate from the Republic and is *not* to be treated the same as the Republic.

*Finally*, even were the Court somehow to find, contrary to the governing documents, that the Republic had some interest in remaining Settlement Trust funds, plaintiffs would not be able to satisfy the separate requirement of the U.S. Foreign Sovereign Immunities Act ("FSIA").  To execute on a foreign state's assets under the FSIA, a plaintiff must demonstrate that state assets

are being "used" by the state.  Even assuming, counterfactually, a residual Republic interest in the property at issue, that interest is not being "used for" anything by the Republic.  *Aurelius Capital Partners, LP v. Republic of Argentina* held that money in the hands of a third party in the United States solely for purposes of later transfer to the Republic in Argentina was not being "used" by the Republic at the time execution or attachment was sought.  584 F.3d 120, 131 (2d Cir. 2009).  The same logic applies *a fortiori* to a residual interest in money owned by a separate entity that the Republic is not "using" and that cannot be "used" by it.

The Motions must be denied.

## BACKGROUND

On April 22, 2016, the Republic, after extensive negotiations supervised by the Court-appointed Special Master Daniel Pollack, Esq., settled litigation involving the vast majority of claims remaining from its default in 2001 on over $80 billion of public external indebtedness, after the Second Circuit affirmed this Court's decision that "changed circumstances so altered the equities as to disfavor maintenance of the [*pari passu*] Injunctions."  Summary Order at 21, *Aurelius Capital Master, Ltd., et al. v. Republic of Argentina*, No. 16-628(L) (2d Cir. Apr. 15, 2016), ECF No. 566, *affirming* Order at 4, *NML Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 8601 (TPG) (S.D.N.Y. Mar. 2, 2016), ECF No. 76 (the "March 2 Order").

The Second Circuit approved this Court's March 2 Order conditioning the vacatur of the *pari passu* injunctions, which had prevented the Republic's access to global financial markets, on two conditions: (i) the repeal of Argentine legislative obstacles to settlement, and (ii) the Republic's full payment to all plaintiffs that, on or before February 29, 2016, entered into agreements in principle ("AiPs") to settle with the Republic.  March 2 Order at 5.

A.    **The Republic's Issuance Of $9.372 Billion In Principal Amount Of Bonds For The Purpose Of Paying Settling Parties Did Not Create Property Subject To Execution**

In accordance with the process described in the settlement documents approved by the Court prior to the lifting of the *pari passu* injunctions, the Republic issued $9.372 billion (the "Settlement Issuance") in principal amount of bonds (the "Debt Securities") to raise proceeds to settle outstanding claims with holders of defaulted bonds that had entered into AiPs prior to April 21, 2016.  Decl. of Matthew Dukes ¶ 2, *NML Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 8601 (TPG) (S.D.N.Y. Apr. 22, 2016), ECF No. 85-2 (the "Dukes Decl.") (Ex. B); Offering Memorandum at 218 (Ex. E).  The Debt Securities were offered through a private placement with seven initial purchasers (the "Purchase Agreement"), who purchased the Debt Securities at their initial offering price for resale of the Debt Securities to their clients.  Purchase Agreement at 2-3 (Ex. B).  The seven initial purchasers were Deutsche Bank Securities Inc., HSBC Securities (USA) Inc., J.P. Morgan Securities LLC, Santander Investment Securities Inc., BBVA Securities Inc., Citigroup Global Markets Inc., and UBS Securities LLC (the "Initial Purchasers").  Offering Memorandum at 218 (Ex. E).  The Initial Purchasers were coordinated by Deutsche Bank Securities Inc. as the billing and delivery bank (the "Billing and Delivery Bank"), which collected the funds from each Initial Purchaser and effectuated the payments described below.  Purchase Agreement at 5 (Ex. B).  JPMorgan was an Initial Purchaser of $1,780,680,000 in principal amount of the Debt Securities and played no other role in the Settlement Issuance.  Decl. of Lisandro Miguens ¶¶ 1, 3 May 11, 2016 (the "Miguens Decl."); Offering Memorandum at 218 (Ex. E); Purchase Agreement, Sched. I (Ex. B).

The Republic never received the proceeds from the Settlement Issuance and retains no rights in such proceeds.  The Billing and Delivery Bank paid $6,251,614,439 directly to creditors

who held *pari passu* injunctions and who had entered into AiPs by February 29.  Decl. of

Santiago Bausili ¶ 5, *NML Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 8601 (TPG)

(S.D.N.Y. Apr. 22, 2016), ECF No. 85-1 (the "Bausili Decl.") (Ex. A); Dukes Decl. ¶¶ 3-4 (Ex.

B); Offering Memorandum at 29 (Ex. E); Purchase Agreement at 5 (Ex. B).

      After payment to the settling creditors, the Billing and Delivery Bank then paid the

balance of $975,496,855.30 and € 1,829,623,670.00 directly into a settlement trust (the

"Settlement Trust") for the benefit of other settling creditors, as described below.  Offering

Memorandum at 29, 198 (Ex. E); Purchase Agreement at 5 (Ex. B).  On April 22, 2016, this

Court issued its Order reflecting confirmation that settling plaintiffs holding *pari passu*

injunctions had received the money they were owed, thus meeting the second condition for the

lifting of the *pari passu* injunctions.  Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 14

Civ. 8601 (TPG) (S.D.N.Y. Apr. 22, 2016), ECF No. 86 (the "April 22 Order").[2]  This sum paid

into the Settlement Trust by the Billing and Delivery Bank corresponds to the committed

settlements under additional AiPs.  Settlement Trust Agreement at 3 (Ex. C).  The Initial

Purchasers meanwhile received their portions of the Debt Securities, which were credited to their

accounts at the Depository Trust Company ("DTC").  Offering Memorandum at 4 (Ex. E).

      Prior to the April 22 closing date, the Republic had entered into a settlement trust

agreement (the "Settlement Trust Agreement") with the Bank of New York Mellon, as trustee

(the "Settlement Trustee").  *See* Settlement Trust Agreement (Ex. C); Offering Memorandum at

198 (Ex. E).  Pursuant to the Settlement Trust Agreement, the Republic irrevocably assigned all

of its rights, title and interest in the full proceeds paid into the Settlement Trust to the Settlement

Trustee, for the benefit of, and payment to certain creditors (the "Creditor Beneficiaries"):

---

[2] The Argentine Congress enacted legislation to satisfy the first condition on March 31, 2016.  Bausili
Decl. ¶ 3 (Ex. A); April 22 Order at 2 (stating "the court now finds that the conditions precedent have
been met").

> The Republic has heretofore irrevocably assigned to the Settlement
> Trustee the Republic's right to receive the full amount of the Proceeds
> upon the closing . . . of the issuance of the New Bonds . . . , to be held by
> the Settlement Trustee in trust for the benefit of the [Creditor]
> Beneficiaries.

Settlement Trust Agreement at 2 (Ex. C).  *See also* Purchase Agreement at 14 (Ex. B) ("The Net

Proceeds from the sale of the Securities will be applied to settle claims with holders of certain

outstanding bonds of the Republic.  The Republic will have no proprietary or reversionary

interest in the Net Proceeds.")  In addition, the Republic disclaimed any further interest in the

funds.  As set forth in the Purchase Agreement and Offering Memorandum, BNYM, as

Settlement Trustee, has a perfected property interest in the funds.  *See* Purchase Agreement at 4

(Ex. B) ("The Republic hereby irrevocably: . . . transfers and assigns (and grants a first priority

security interest in) the Republic's right to receive the payment . . . of the [proceeds] of the

Offering"); Offering Memorandum at 29 (Ex. E) ("All of the Republic's rights, title and interest

in the Settlement Amount will be irrevocably assigned, and a first priority security interest will

be created in all of the Republic's rights to receive the Settlement Amount, in favor of the

settling claimants.").  The Republic then perfected the Settlement Trustee's security interest in

the assigned rights by filing Uniform Commercial Code financing statements.  UCC Financing

Statement (Ex. D); Settlement Trust Agreement at 2 (Ex. C) ("the Republic shall perfect, or shall

have perfected, the Settlement Trustee's security interest in the Assigned Rights in all relevant

jurisdictions by filing appropriate Uniform Commercial Code financing statements").

 The Creditor Beneficiaries under the Settlement Trust Agreement are (i) bondholders

with whom the Republic had entered AiPs but whose payment was not a prerequisite for

vacating the *pari passu* injunctions, and (ii) only in the unlikely event that the Settlement Trust is

not able to distribute all of the funds in accordance with the Settlement Trust Agreement, then

BCRA, for the repayment of outstanding indebtedness of the Republic to BCRA under LETRA

2025, a note for sums previously loaned to the Republic by BCRA.  As set forth in the

Settlement Trust Agreement:

> If for any reason the Settlement Trustee is not able to distribute all of the
> Trust Funds in accordance with the [Delivery versus Payment] Process . . .
> on or prior to October 22, 2016 . . . the Settlement Trustee shall pay the
> Trust Funds in its possession on that day . . . to the BCRA for application
> of such funds to the repayment of outstanding indebtedness of the
> Republic to the BCRA under LETRA 2025 held by the BCRA.

Settlement Trust Agreement at 3 (Ex. C).  As Settlement Trustee for the Creditor Beneficiaries,

BNYM holds the funds in trust for the benefit *only* of the Creditor Beneficiaries – and *not* the

Republic.  Settlement Trust Agreement at 2-4 (Ex. C).  Accordingly, the Republic has no right

whatsoever to the funds held at BNYM.

### B.   The Republic's Issuance Of $7.128 Billion In Principal Amount Of Bonds, Which Took Place Wholly In Argentina, Did Not Create Property Subject To Execution

The vacatur of the *pari passu* injunctions left the Republic free to "return to the global

financial markets to raise much-needed capital," Rule 62.1 Indicative Ruling at 8, *NML Capital,*

*Ltd. v. Republic of Argentina*, No. 14 Civ. 8601 (TPG) (S.D.N.Y. Feb. 19, 2016), ECF No. 59

(the "February 19 Indicative Ruling").  The Republic then closed a second bond issuance on

April 22, 2016 in Argentina for $7.128 billion in principal amount of bonds (the "Argentina

Issuance").  Offering Memorandum at 218-19 (Ex. E).  The same Initial Purchasers purchased

debt securities in the Argentina Issuance and the same Billing and Delivery Bank coordinated the

syndicate.  JPMorgan was an Initial Purchaser of $1,354,320,000 in principal amount of the

bonds and played no other role in the Argentina Issuance.  Miguens Decl. ¶ 4; Offering

Memorandum at 218 (Ex. E).  The Billing and Delivery Bank made the payment to the Republic

for the Argentina Issuance in Argentina, where the funds remained.  Miguens Decl. ¶ 4; Purchase
Agreement at 5 (Ex. B).

      C.      **The Present Motions**

      The first of these Motions was filed by the Ladjevardian plaintiffs against the Republic
and JPMorgan Chase & Co. on April 26, 2016.  Three days later, on April 29, 2016, the
Ladjevardian plaintiffs filed a similar Motion against the Republic and BNYM.  As demonstrated
by the papers presented to the Court by the Ladjevardian plaintiffs, those plaintiffs seek less in
turnover than the overall amount of their original judgments.   *Compare* Decl. of Jessica J.
Sleater Ex. A, *Ladjevardian, et al. v. Republic of Argentina*, No. 06 Civ. 3276 (TPG) (S.D.N.Y.
Apr. 25, 2016), ECF No. 38-2 (the "Sleater Decl.") *with* Sleater Decl. Ex. B.  That is so because,
as the Ladjevardian plaintiffs concede, certain of those plaintiffs transferred or sold their bonds
without this Court's approval, and so in violation of this Court's June 14, 2007 Order.  Sleater
Decl. ¶ 6 (noting that post judgment certain plaintiffs sold "some of their Bonds"); Order at 7,
*Ladjevardian, et al. v. Republic of Argentina*, No. 06 Civ. 3276 (TPG) (S.D.N.Y. June 14, 2007),
ECF No. 17 ("It is further ordered that, until further notice from the Court, plaintiffs must refrain
from selling or otherwise transferring their beneficial interest in the bonds involved in this action
without advising the Court in advance and obtaining the permission of the Court").  It also
appears that these bonds were transferred among the Ladjevardian plaintiffs, again without Court
approval and so in violation of this Court's June 14, 2007 Order.  *See* Sleater Decl. ¶ 6 ("Also
some of the entities holding the Bonds were transferred to the individuals that owned those
entities and their beneficiaries."); Sleater Decl. Ex. B.

      On May 2, 2016, the Colella plaintiffs filed their Motions against the Republic and
BNYM.  Likely realizing JPMorgan's limited role in these transactions, the Colella plaintiffs did
not join the Ladjevardian plaintiffs' motion for turnover against JPMorgan.

Notwithstanding that the terms of the Settlement Trust Agreement make plain that any property held by BNYM is *not* Republic property but belongs to the Creditor Beneficiaries – the settling parties or BCRA – plaintiffs move pursuant to CPLR §§ 5225(b) and 5230 to execute upon that property in satisfaction of their judgments against the Republic.[3]  Plaintiffs' Motions lack any legal basis and must be denied.

**ARGUMENT**

**PLAINTIFFS' TURNOVER MOTIONS MUST BE REJECTED**

I.   **Plaintiffs Have Failed To Identify Any Republic Property Subject To Execution Because BNYM And JPMorgan Possess No Proceeds In Which The Republic Has An Interest**

A.   **JPMorgan Does Not Hold The Funds Targeted By Plaintiffs**

The Ladjevardian plaintiffs – shooting in the dark in hopes of finding attachable property of the Republic – improperly moved for the turnover of Republic property held at JPMorgan. JPMorgan holds no proceeds of the Settlement Issuance or the Argentina Issuance in which the Republic has an interest.  Miguens Decl. ¶¶ 3-5.  As an Initial Purchaser in the Settlement Issuance, JPMorgan paid for and received the Debt Securities; accordingly, it did not receive any *proceeds* from the transaction, as the Ladjevardian plaintiffs insinuate in their brief. Ladjevardian Apr. 26 Br. at 3.  On April 22, 2016, JPMorgan paid the Billing and Delivery Bank its own funds in exchange for $1,780,680,000 in principal amount of bonds in the Settlement Issuance, and $1,354,320,000 in principal amount of bonds in the Argentina Issuance.  Miguens Decl. ¶¶ 1, 3, 4; Offering Memorandum at 218 (Ex. E); Purchase Agreement, Sched. I (Ex. B). The Billing and Delivery Bank effectuated this payment in Argentina on behalf of JPMorgan as an Initial Purchaser; the Billing and Delivery Bank took delivery of the bonds in Argentina; and

---

[3] Plaintiffs' motion pursuant to CPLR § 5225(b) applies only to "Property not in the possession of judgment debtor."

9

the Billing and Delivery Bank then caused the Debt Securities to be credited to JPMorgan's account at DTC.  Miguens Decl. ¶ 4; Offering Memorandum at 218 (Ex. E).  Because it has never received or held any funds targeted by plaintiffs, plaintiffs' motion should be denied with respect to JPMorgan.

### B.   The Property Targeted By Plaintiffs At BNYM Is Not Subject To Execution Because The Republic Has No Interest In That Property

The Court must also deny plaintiffs' requests to turn over funds held at BNYM because those funds plainly belong to the settling bondholders, or otherwise to BCRA.  Section 5225(b) creates a remedy for judgment creditors in situations where property of a judgment debtor is in the possession or custody of a third party, and to invoke section 5225(b), a judgment creditor must show, *inter alia*, "either that the judgment debtor is 'entitled to the possession of such property,' *or* . . . that 'the judgment creditor's rights to the property are superior' to those of the party in whose possession it is." *Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991) (quoting  N.Y. C.P.L.R. § 5225(b)).  *See also Dussault*, 616 F. App'x at 27-28 (citing *Beauvais* in denying turnover motion against BNYM where BNYM held funds in trust for certain Republic creditors and where the Republic had no entitlement to those funds); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 476 n.13 (2d Cir. 2007) ("party seeking to enforce a judgment . . . . cannot reach . . . assets in which the judgment debtor has no interest") (citation omitted); *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir. 2002) (same); *Bass v. Bass*, 528 N.Y.S.2d 558, 560-61 (1st Dep't 1988) ("CPLR 5201(b) provides that a judgment may be enforced [only] against any property which could be assigned or transferred, that is, property that the judgment debtor has the power to assign or transfer.") (citation omitted).

10

Plaintiffs do not – because they cannot – dispute this basic legal standard.  *See* Ladjevardian Apr. 29 Br. at 7; Colella Br. at 6 (acknowledging that plaintiffs must "show that the judgment debtor is in possession of or entitled to money or property").  Plaintiffs nonetheless assert – without any basis – that they have somehow met their burden of satisfying CPLR § 5225(b) because they baldly claim that the Republic has an interest in Settlement Issuance proceeds held at BNYM, and because "BNYM . . . does not have an interest in the proceeds for Argentina" and plaintiffs' rights are "superior to BNYM's."  Ladjevardian Apr. 29 Br. at 7; Colella Br. at 6-7.  But plaintiffs offer *nothing* in support of this assertion other than their *ipse dixit*.  *See id.*  Nor could they possibly do so.  As made clear above, the Republic never received the proceeds from the Settlement Issuance, which proceeds were paid directly into BNYM's account *to be held in trust for the Creditor Beneficiaries*.  *See* Bausili Decl. ¶ 5 (Ex. A); Dukes Decl. ¶¶ 3-4 (Ex. B); Settlement Trust Agreement at 2 (Ex. C) ("The Republic has heretofore irrevocably assigned to the Settlement Trustee the Republic's right to receive the full amount of the Proceeds upon the closing . . . of the issuance of the New Bonds . . . , to be held by the Settlement Trustee in trust for the benefit of the [Creditor] Beneficiaries").  Plaintiffs' Motions thus fail under black letter law, which mandates that a creditor may *not* execute – including under CPLR § 5225(b) – upon property in which the debtor has no interest.  N.Y. C.P.L.R. § 5225(b) (court may enter "turnover" order only with respect to "property in which the judgment debtor has an interest").[4]  The funds held by BNYM are the property of the Creditor

---

[4] As plaintiffs have failed to identify any property in which the Republic has an interest, N.Y. C.P.L.R § 5230, also invoked by plaintiffs, is inapplicable because it provides procedurally only for execution on property in which the debtor has such an interest.  *See*  Siegel, Practice Commentaries, N.Y. C.P.L.R. § 5230, C5230:1 (McKinney) ("It is available against any non-exempt property in which the defendant has an interest . . . . The property execution is just a paper delivered to the court's enforcement officer, usually the sheriff, directing the sheriff to levy against any non-exempt property that can be found belonging to the judgment debtor.").

Beneficiaries, and the Republic lacks any interest in them. *See* Settlement Trust Agreement at 2-4 (Ex. C).

The Second Circuit recently affirmed this Court's denial of a turnover motion by different plaintiffs against BNYM and the Republic on similar facts. *See Dussault*, 616 F. App'x at 27-28. In that case, plaintiffs sought turnover of funds that were also being held in trust at BNYM for the benefit of Republic creditors – the exchange bondholders. The Second Circuit held that plaintiffs in that case, like plaintiffs here, could not satisfy *Beauvais*, and as a result they could not get turnover of the property at issue. *Id.* at 27-28.

*First*, the Second Circuit found that the Republic was not "entitled to the possession" of the assets held by BNYM, because for that prong to be met, the Republic must have been able to retrieve the disputed assets back from BNYM. *Id.* at 27 (citing *Swezey v. Lynch*, 87 A.D.3d 119, 926 N.Y.S.2d 415, 419 (2011)). So too here. The Republic does not own the money in the Settlement Trust and cannot retrieve that money back from BNYM, as those assets are being held in trust for settling parties, or are otherwise irrevocably assigned to BCRA. Settlement Trust Agreement at 2-4 (Ex. C). The Republic has no ability to possess these funds, and so plaintiffs fail to establish the first prong of *Beauvais*.

*Second*, in *Dussault* the Second Circuit held that plaintiffs' rights to the property at issue were not "superior" to the rights of BNYM. *Id.* at 28. There, as here, plaintiffs argued only that their claims were superior because they have money judgments that the Republic has failed to satisfy. *Id.* at 28; Ladjevardian Apr. 29 Br. at 7; Colella Br. at 7. And there, as here, plaintiffs cited no authority permitting courts to determine "superior" rights to property based on such an assertion, or on any other "subjective equitable assessment[] of the relative fairness of paying one class of creditor or another." *Dussault*, 616 F. App'x at 28. Rather, as the Second Circuit

12

recognized, "'superior' rights in property have been assessed by New York courts based on legal interests in the property, as for example where the 'fraudulent conveyance provisions of the [New York] Debtor and Creditor Law' apply." *Id.* (citing *Gelbard v. Esses*, 96 A.D.2d 573, 465 N.Y.S.2d 264, 268 (1983). Plaintiffs of course cannot meet this standard. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (holding that a preference among creditors is neither actually nor constructively fraudulent under New York law).

Nor do plaintiffs claim any other legal interest in the Funds at BNYM, such as a security interest, but rather rely only on their status as unsecured general creditors of the Republic. Ladjevardian Apr. 29 Br. at 7-8; Colella Br. at 7-8. Their rights to the funds held at BNYM are therefore not superior to those of BNYM. To the contrary, BNYM holds solely as trustee for the Creditor Beneficiaries. The Creditor Beneficiaries' rights, including any interests irrevocably assigned to BCRA – which has a senior lien on any funds left over in the settlement trust after all settlements are paid, if there are any – are clearly superior to plaintiffs'. Nor can plaintiffs argue that their standing as creditors of the Republic gives them any rights to BCRA's residual interest; the Second Circuit has clearly ruled that BCRA is separate from the Republic and should not be treated as the Republic. *See, e.g.*, *EM Ltd., et al. v. Banco Central de la República Argentina*, 800 F.3d 78, 99 (2d Cir. 2015) (rejecting the contention that BCRA is the alter-ego of the Republic). Because plaintiffs fail to satisfy the requirements of 5225(b), plaintiffs' Motions must be denied. *Dussault*, 616 F. App'x at 27-28.

Plaintiffs also refer in passing to the *pari passu* clause, insinuating that the clause is being violated because they are supposedly not receiving the same offers or treatment in settlement negotiations as other former-creditors of the Republic. Ladjevardian Apr. 29 Br. at 2-4; Colella Br. at 1-3. This is untrue: they have been offered the same settlement as all other creditors who

did not hold *pari passu* injunctions – which injunctions have now been vacated.  In any case, the *pari passu* clause is inapposite to these Motions, which seek post-judgment enforcement through the turnover of property in the hands of a third party.  The *pari passu* clause does not give plaintiffs any rights to the property they seek, not least because that clause, and any injunctions previously entered to effectuate that clause, has nothing to do with post-judgment execution. *See, e.g.*, *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 263 n.14 (2d Cir. 2012) ("[n]othing in the [*pari passu*] Injunctions suggests that plaintiffs would 'execute upon' any funds, much less those held in trust for [third parties]").  Moreover, as this Court's recent rulings regarding the Republic's historic settlement demonstrate, the Republic's offers, negotiations and payments to certain of its former and current creditors does not violate the *pari passu* clause.  *See generally* March 2 Order at 3; February 19 Indicative Ruling at 21-23.

### C.      Plaintiffs' Motions For Turnover Otherwise Fail Under The FSIA

Even if this Court were to find that the Republic has a property interest in the funds held in trust at BNYM – which it should not – plaintiffs' Motions for turnover otherwise fail because they cannot establish that any of that property is being "used" by the Republic as required by the FSIA.  The FSIA sets forth the sole, comprehensive scheme for obtaining and enforcing a judgment against a foreign state in U.S. courts.  *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  *See also NML Capital, Ltd. v. Republic of Argentina*, 680 F.3d 254, 257 (2d Cir. 2012) (same); H.R. Rep. No. 94-1487, at 12 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6610-11 (FSIA "prescribes . . . [the] circumstances under which attachment and execution may be obtained against the property of foreign states").  The FSIA strictly constrains courts' remedial authority.  A foreign state's property in the United States "shall be immune from attachment arrest and execution except as provided" in 28 U.S.C. §§ 1610 and

14

1611.  28 U.S.C. § 1609.  Section 1610 in turn provides that a foreign sovereign state's property may be attached or executed upon if it is both located in and "used for a commercial activity" in the United States, and the sovereign has waived its enforcement immunity or another exception applies.  28 U.S.C. § 1610(a).

The property targeted by plaintiffs is not property of the Republic that is being "used" by the Republic.  Rather, it is property in the hands of a third party, BNYM, that is not – and in fact cannot be – "used" at all by the Republic, much less for a commercial activity.  The Second Circuit has so held when faced with similar facts.  In *Aurelius Capital Partners, LP v. Republic of Argentina*, which plaintiffs incorrectly cite to support their argument, Ladjevardian Apr. 29 Br. at 9 n.2; Colella Br. at 8 n.2, the Second Circuit vacated attachments by plaintiffs directed to third-party pension administrators where the Republic had passed legislation requiring the repatriation of those assets to the Republic.  584 F.3d 120, 131 (2d Cir. 2009).  The Second Circuit held that the property – while in the hands of third parties – was not being "used for commercial activity" by the Republic because the Republic did not have the "opportunity to use" funds that were not in its possession.  *Id.* at 131.[5]  There, as here, the FSIA precluded execution on property in the hands of third parties that the Republic has no ability to access, much less "use," and plaintiffs' Motions should be denied for this additional reason.[6]

---

[5] Plaintiffs also incorrectly cite *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715 (TPG), 2010 WL 768874, at *4 (S.D.N.Y. Mar. 5, 2010) to distinguish the facts presented here from the facts in that case.  Ladjevardian Apr. 29 Br. at 9 n.2; Colella Br. at 8 n.2.  Their invocation of that case is baffling:  in *Aurelius*, this Court found that assets of the Republic deposited in the Argentine branch of a bank headquartered in the United States were immune from attachment, restraint and execution.  *Aurelius*, 2010 WL 768874, at *4.  Here, plaintiffs seek to execute upon property "*in the U.S.*," Ladjevardian Apr. 29 Br. at 7; Colella Br. at 7 (emphasis added), but the property in question is not property of the Republic and is not being "used" by the Republic.

[6] Plaintiffs' reference to the "Bond Offering," Ladjevardian Apr. 29 Br. at 8, 9 n.2; Colella Br. at 8 n.2, is irrelevant, as what matters is not how the funds were generated, but whether or not they are being "used" by the Republic – which they are not.  *See Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d

## II.      Plaintiffs Are Not Entitled To Discovery

Plaintiffs have failed to establish any entitlement to discovery and the Court should exercise its broad discretion to deny their purported discovery "demand."  *See* Ladjevardian Apr. 29 Br. at 9; Colella Br. at 9.

*First*, plaintiffs have not even propounded any discovery demands as required by the Federal Rules.  Rather, in almost throwaway fashion, they simply assert in the conclusion of their briefs that in the event the Court needs more information to identify accounts with property of the Republic in the United States, they should be "allow[ed] [] to proceed" with discovery from Argentina, JPMorgan and BNYM.  Ladjevardian Apr. 29 Br. at 9 (seeking discovery "pursuant to FRCP 60(a)(2)," notwithstanding that Rule 60, titled "Relief from a Judgment or Order," has nothing to do with discovery); Colella Br. at 9 (same).  It cannot be an abuse of discretion to deny such an undefined discovery "demand."  *See, e.g.*, *EM Ltd.*, 473 F.3d at 469 n.5, 486 (acknowledging that it would be problematic to grant discovery when plaintiff "has not . . . cited to any part of the record demonstrating that these specific requests were made to the District Court" but "[n]evertheless, . . . assum[ing] *arguendo* that . . . these requests were made," affirming denial of such requests and recognizing the principle that "a federal trial court has wide latitude over the management of discovery.").  *See also McManemy v. Roman Catholic Church of Diocese of Worcester*, 2 F. Supp. 3d 1188, 1198 (D.N.M. 2013) (denying discovery request where "[g]ranting discovery so that the Plaintiff may find facts which would then equip him to make the missing allegations and to confirm his unfounded legal conclusions would undoubtedly be the archetype of a fishing expedition.")

---

1080, 1087 (9th Cir. 2007) ("What matters under the statute is what the property is 'used for,' not how it was generated or produced.") (citation omitted).

*Second*, discovery is properly denied when it is not "reasonably related to the discovery of attachable assets." *Rossini, et al. v. Republic of Argentina*, 453 F. App'x 22, 24-25 (2d Cir. July 1, 2011) (Summary Order) (affirming district court's denial of post-judgment discovery against the Republic, the Province of Buenos Aires and four non-party banks). *Rossini* is instructive. In that case, this Court denied discovery demands where plaintiffs put forth incorrect legal theories but nonetheless tried to justify that discovery could lead to "an appropriate injunction if that is what is called for." This Court determined that such a speculative discovery request was "[t]oo vague" and therefore failed to show that discovery was reasonably connected to the potential attachment of assets, and the Second Circuit affirmed. Hr'g Tr. at 44:17-45:3, *EM Ltd., et al. v. Republic of Argentina*, No. 03 Civ. 2507 (TPG), (S.D.N.Y. Dec. 17, 2010) (transcript of joint discovery hearing for *Rossini* as well as other plaintiffs) (Ex. F); *Rossini*, 453 F. App'x at 24-25. *See also* N.Y. C.P.L.R. § 5223 ("the judgment creditor may compel disclosure of all matter *relevant* to the satisfaction of the judgment") (emphasis added); Siegel, Practice Commentaries, N.Y. C.P.L.R. § 5223, C5223:2 (McKinney) (under CPLR creditor must show that the discovery sought "is relevant to the judgment debtor's income and property"). In *EM Ltd. v. Republic of Argentina*, plaintiffs sought to seize BCRA reserves held at the Federal Reserve Bank of New York ("FRBNY") and this Court found that the lack of any showing of attachability supported its denial of discovery (a denial affirmed by the Second Circuit). 473 F.3d at 486 ("Because the record makes clear that the FRBNY Funds were never an attachable asset of the Republic and that § 1610's 'commercial activity' exception to immunity from attachment does not apply, EM was 'not entitled to any other discovery,' as it has failed to 'show[ ] a reasonable basis for assuming jurisdiction' over BCRA.") (citations omitted). Here, the evidence submitted by third parties as well as the indisputable documentary evidence

demonstrates that plaintiffs have not identified, and cannot identify, property of the Republic that could possibly be subject to these execution efforts, and accordingly discovery is appropriately denied.[7]

## CONCLUSION

For the foregoing reasons, the Motions should be denied.

Dated:  New York, New York
      May 12, 2016

          Respectfully submitted,

          CLEARY GOTTLIEB STEEN & HAMILTON LLP

          By:    /s/ Carmine D. Boccuzzi
               Carmine D. Boccuzzi (cboccuzzi@cgsh.com)
               Howard S. Zelbo (hzelbo@cgsh.com)

          One Liberty Plaza
          New York, New York 10006
          (212) 225-2000

          Attorneys for the Republic of Argentina

*Of Counsel*:
Kristin A. Bresnahan
Richard Freeman

---

[7] Plaintiffs' additional request that the Court "restrain Defendant from removing those proceeds from U.S. banks based on notice of the present motion," Ladjevardian Apr. 29 Br. at 9; Colella Br. at 9, while plaintiffs are allowed to proceed with discovery also must be denied because, as made clear above, the Republic has no interest in – or ability to exercise control over – the proceeds at issue. *See, e.g.*, Settlement Trust Agreement at 2-4 (Ex. C).