UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────x
                                :
MOHAMMAD LADJEVARDIAN, et al.,   :   06 CIV. 3276 (TPG)
                                :
            Plaintiffs,          :
                                :
    vs.                          :
                                :
THE REPUBLIC OF ARGENTINA,       :
                                :
            Defendant.           :
                                :
───────────────────────────────x
                                :
MICHELE COLELLA and DENISE DUSSAULT, :   04 CIV. 2710 (TPG)
                                :
            Plaintiffs,          :
                                :
    vs.                          :
                                :
THE REPUBLIC OF ARGENTINA,       :
                                :
            Defendant.           :
                                :
───────────────────────────────x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTIONS FOR WRIT OF EXECUTION AND FOR TURNOVER ORDERS AGAINST
THE REPUBLIC OF ARGENTINA, JPMORGAN AND THE BANK OF
<u>NEW YORK MELLON CORPORATION</u>**

ANDERSEN SLEATER LLC
Jessica J. Sleater
1345 Ave. of Americas
2nd Floor, Suite 2100
New York, NY 10105

Plaintiffs[1] in above captioned actions, having obtained civil money Judgments rendered by this Court against defendant, the Republic of Argentina, respectfully submit this reply memorandum in further support of their motions for issuance of writs of execution and a turnover orders against Argentina, J.P. Morgan Securities LLC[2] and The Bank of New York Mellon pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, 28 U.S.C. Section 1610 (a) and (c), and Sections 5225(b) and 5230 of the New York Civil Practice Law and Rules (collectively the "Motions").

## PRELIMINARY STATEMENT

Upon promptly learning through public information that ***Argentina was issuing*** a private 2016 Bond Offering in order ***to raise proceeds for Argentina*** (the "Proceeds" or "Bond Proceeds") over only a few days, Plaintiffs filed the instant Motions seeking the limited relief of executing on this Court's Judgments rendered in their favor nearly a decade ago before

---

[1] Additional defined terms in this reply have the same meanings as set forth in Plaintiffs' Motions, Memorandums and Declarations of Jessica Sleater. The reply is submitted jointly in support of the Motions and in response to the Memorandums in Opposition to the Motions ("Oppositions") filed by Argentina ("Argentina Br."), JPMorgan ("JPMorgan Br.") and BNYM ("BNYM Br.") as agreed by counsel and endorsed by the Court on May 4, 2016. (Dkts. 51, 59).

[2] Plaintiffs were forced to file their motion against parent JPMorgan Chase & Co. based on publicly available information, as indicated in their opening brief, about the private 2016 Bond Offering. It was only revealed in Argentina's filing on April 22, 2016, buried in exhibit C to the Dukes Declaration on the Purchase Agreement dated April 19, 2016, that it was subsidiary J.P. Morgan Securities LLC ("JPMorgan" refers to both entities herein) along with Deutsche Bank Securities Inc., HSBC Securities (USA) Inc. and Santander Investment Securities, all New York-entities that were the initial purchasers of the first phase of the 2016 Bond Offering. (Sleater Decl. Ex. B at 1 (Purchase Agreement); C.A. No. 1:08-cv-06978-TPG, Dkt. 936-3 at p. 2). JPMorgan also takes issue with the manner of service of the Motion. When considering motions pursuant to FRCP 69(a), federal courts look to New York law. CPLR Section 5225(b) requires "notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested."

1

Argentina transferred the Proceeds out of this country.[3] Unlike other bondholders, like NML, who received a disproportionate fulfillment for their long outstanding claims to other bondholders, Plaintiffs, despite holding bonds with contractual *pari passu* clauses entitling them to equal treatment, are only being offered 150% of their principle despite holding enforceable Judgments from this Court.

Only now in the Oppositions has Argentina, through JPMorgan and BNYM, revealed that yet again it has attempted to circumvent the Court and the ability of Plaintiffs and other non-settled bondholders to receive the full value of what they are legally owed in two ways: 1) by entering various agreements that purport to waive Argentina's interest in the Bond Proceeds at BNYM, and 2) by performing the second phase of its 2016 Bond Offering beyond the Court's reach in Argentina. However, as the Settlement Trust Agreement makes clear, Argentina retains an interest in the Proceeds at BNYM because it determines how the Proceeds are paid, not BNYM. Bresnahan Decl. at Ex. C. If this was not true, Plaintiffs would be able to go to BNYM and demand the full payment of their Judgments, to which Argentina would no doubt object.

Plaintiffs have identified attachable assets, the Bond Proceeds, that are recognized as commercial activity as part of the 2016 Bond Offering that are not immune under FSIA. For this reason, the Court should grant the Motions and permit Plaintiffs to recover what they have been legally owed for over a decade by Argentina. Alternatively, if the Court finds it premature to grant the Motions, Plaintiffs request that it permit them to conduct limited discovery of the Proceeds at BNYM and in particular concerning the newly provided evidence presented in the

---

[3] The urgency of this relief is also emphasized by the Court lifting the extraordinary injunctions on Argentina's assets that were previously in place based on the *pari passu* clauses in the bonds that Plaintiffs also have in their bonds curtailing Argentina's ability to freely move in the market. (C.A. 1:08-cv-06978-TPG, Dkt. 937). Plaintiffs now are left with only the limited remedies sought in their Motions to enforce their Judgments.

Oppositions to determine if the Settlement Trust Agreement is a fraudulent conveyance of Argentina's rights to the Proceeds and back to itself through the Central Bank of Argentina ("BCRA") to again avoid paying Plaintiffs their Judgments.

## I. Argentina Retains an Interest in the Bond Proceeds at BNYM

Argentina continues to have an interest in the Bond Proceeds at BNYM because it continues to dictate how the money is distributed for its benefit to bondholders that settle with it and to its other creditors, including the BCRA. CPLR § 5201(b) provides that Plaintiffs' Judgments "may be enforced against any property, which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested" by Argentina. If Argentina actually waived all of its interest in the Bond Proceeds as it and BNYM argue, it would not be able to determine how the money is paid out, and bondholders could freely negotiate and execute upon their Judgments with BNYM as the beneficiaries of the trust. However, neither Argentina nor BNYM state that is the case nor does the Settlement Trust Agreement.

Instead the Settlement Trust Agreement makes clear that Argentina, not BNYM, is "entitled" to the Proceeds pursuant to CPLR § 5225(b) because it is dictating how the money is spent for its own benefit for settlement of claims with bondholders and back to BCRA, which may in fact really be Argentina. *See, e.g.,* Bresnahan Decl., Ex. C at 6(a) (detailing the communication Argentina will send to bondholders, and BNYM's payment of settlement funds to bondholders by Argentina only pursuant to an undisclosed Schedule 1); 6(b) (payment of any surplus to the BCRA). BNYM also disclaims any liability for payment of the Proceeds to bondholders and is required by Argentina to give Argentina notice promptly of any dispute and to only act after receiving written instructions from Argentina. *See, e.g., id*. at Ex. C at 8, 9 (a)(ii)-(vii), 9(b)(v), (vii), (xi) (BNYM is not obligated to take action on behalf of bondholders).

3

It is clear that Argentina continues to remain ultimately liable and in control of the Proceeds held by BNYM, which is merely acting as its agent. Any so-called "waiver" of Argentina's rights and interest in the Proceeds in the Settlement Trust Agreement to BNYM and transfer back to BCRA may in fact be a fraudulent conveyance, pursuant to N.Y. Debt. & Cred. Law § 278, in order for Argentina to circumvent this Court's jurisdiction and payment of Plaintiffs' Judgments since it ultimately retains its interest in the Proceeds.[4]

BNYM and BCRA's interests in the Proceeds are certainly not "superior" under CPLR § 5225(b) to Plaintiffs' interests because, as the Settlement Trust Agreement states, BNYM is holding the Proceeds *for the "beneficiary" bondholders* that include Plaintiffs,[5] who must be paid *first,* and only any surplus may be paid to BCRA. *See id.* at Ex. C at (ii) (only failing a full settlement with bondholders will it be transferred to BCRA), 6(b) (if BNYM is unable to distribute all proceeds on or prior to Oct. 22, 2016, the remaining funds will be paid to BCRA); BNYM at 7 (BNYM holds funds "in trust for the benefit of the Beneficiaries"); Argentina Br. at 11 (Proceeds at BNYM are "to be held in trust for the Creditor Beneficiaries").[6] Furthermore,

---

[4] N.Y. Debt. & Cred. Law § 278 provides that "[w]here a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser
a.   [h]ave the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or b. [d]isregard the conveyance and attach or levy execution upon the property conveyed."

[5] Argentina made a unilateral public offer to bondholders and refuses to negotiate with them directly.

[6] This motion is distinguishable from *Dussault v. Republic of Argentina*, 616 Fed. App'x 26 (2d Cir. 2015) cited by Argentina and BNYM because Plaintiffs have demonstrated that Argentina is entitled to the Proceeds at BNYM, and in fact may be directing them back to itself through a fraudulent conveyance to BCRA. Also the Settlement Trust Agreement clearly demonstrates that Plaintiffs' rights as a beneficiary bondholder to the Proceeds are superior to those of BNYM and BCRA. At the time of the motion in *Dussault*, this Court had already granted injunctions over
Footnote continued

directing any surplus of the Proceeds to BCRA that is likely Argentina itself does not grant BCRA a "superior" right over Plaintiffs and may also constitute a fraudulent conveyance by Argentina to avoid this Court's jurisdiction and Plaintiffs' fulfillment of their Judgments. The Court must consider this possibility given Argentina's history, Plaintiffs' discovery requests and the fact that Argentina has revealed that the second phase of the 2016 Bond Offering occurred exclusively in Argentina, where it could also deposit those Proceeds into the BCRA and avoid the Motions. *See* Argentina Br. at 7-8. The BCRA is also issuing bonds for Argentina further complicating and calling into question its relationship as an agent of Argentina and as the beneficiary of the Proceeds. *See* Bloomberg, Argentina Impose Bond Limits After Wall Street Banks' Buy, http://www.bloomberg.com/news/articles/2016-05-18/argentina-imposes-bond-limits-after-wall-street-banks-buy-calls (last visited May 18, 2016) (because of strong foreign investor demand, the BCRA cut interest rates and limited sales to local investors). Argentina retains its interest in the Proceeds at BNYM, subject to execution under CPLR § 5230 and turnover under CPLR § 5225 to Plaintiffs to satisfy their Judgments.

## II. **The Bond Proceeds Are Not Immune**

At the time of these Motions, the Proceeds were the immediate result of the commercial 2016 Bond Offering by Argentina through various New York-entities, as detailed in the Purchase Agreement, to U.S. investors, as publicly reported, to raise money for Argentina - some of which is now held in the U.S. at BNYM, which Argentina does not dispute. FSIA makes clear that courts must look to the use of the money in question, ***not*** the purpose or future intended use, in deciding whether it is immune from attachment. *See* 28 U.S.C. § 1603(d) ("The commercial

---

Argentina's assets held at BNYM that barred Argentina from any entitlement to them (not based on any trust agreement). *Id*. at 28. Here, Argentina is not restricted by any court order from the Proceeds and in fact is dictating how they are paid out.

character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.") It is impossible here to separate the commercial aspect of the 2016 Bond Offering from its Proceeds that were an integral aspect of it because a commercial activity is one carried on for profit, here for Argentina. *See De Letelier v. Republic of Chile*, 748 F.2d 790, 797 (2d Cir. 1984) (commercial activity is considered the type that private parties carry on for profit). Contrary to Argentina's argument, Plaintiffs are not relying on Argentina's future intentions of what it will do or what it cannot do with the Proceeds to meet an exception to FSIA immunity. Argentina Br. at 14-15.  Instead, they rely on the fact that at the time of the Motions the Proceeds were the immediate "profit" of the 2016 Bond Offering of which Argentina retains an interest discussed *supra* that constitutes recognized commercial activity exempt from immunity under FSIA. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 615-17 (1992) (holding that Argentina's issuance of commercial bonds constituted "commercial activity" under FSIA). To follow Argentina's reasoning would lead to an untenable determination of when assets ceases to constitute commercial activity and would likely lead to more fraudulent transfers in order to maintain immunity and hide assets that would otherwise be attachable. It is of no moment that Argentina's "purpose" of the 2016 Bond Offering was to pay its creditors, including bondholders, because the commercial activity exception to the FSIA immunity only looks to the "use" of the 2016 Bond Offering that includes its Proceeds, which was clearly commercial activity.

### III. Plaintiffs Are Entitled to Discovery Relating the Bond Proceeds

Because of the expediency of the private 2016 Bond Offering over only a few days and only subject to media reports, Plaintiffs quickly filed their Motions before the Proceeds could be transferred beyond the reach of this Court and Plaintiffs. With Argentina's track-record of avoiding payment of judgments, preventing execution of judgments and dodging discovery

requests that this Court is all too familiar with, Plaintiffs could not delay in filing the Motions until after they conducted discovery. In fact, as the Settlement Trust Agreement indicates, any Proceeds would be removed from BNYM and the U.S. likely by that time. *See* Bresnahan Decl., Ex. C at 6(b) (indicating that any funds not paid to bondholders on or prior to October 22, 2016 will be paid to the BCRA).

Unsurprisingly, Argentina again seeks to shield itself from further discovery repeating its argument that Plaintiffs have not identified attachable assets of which Argentina has an interest to justify discovery. Argentina Br. at 17. However, as demonstrated, Plaintiffs seek to attach the Proceeds of the 2016 Bond Offering that constitute a commercial use in the U.S. - not immune under FSIA - currently held in trust at BNYM for Argentina that has the ability "to assign or transfer, whether or not vested," and are ***not*** yet property of the BCRA (likely Argentina again) or other bondholders. *See* CPLR § 5201(b). Also as the Supreme Court has made clear in *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2258 (2014), FSIA does not restrict discovery particularly from third parties like BNYM and JPMorgan.

This situation is readily distinguishable from *EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007), cited by Argentina, where the money sought to be attached was already in the possession of the BCRA that the Court found to be a separate entity to the government that was not attachable. *Id*. at 475. Also in *EM*, the plaintiffs relied on the payment of Argentina's debt to IMF from the BCRA, without evidence to support that it occurred, which the Court found insufficient to meet the "commercial use" exception to immunity under FSIA. *Id*. at 482. By contrast here, the Proceeds are identified and attachable and further discovery should be granted. *Contrast with id.* at 486.

Furthermore, discovery of the Proceeds is ripe because it is unclear what the BCRA will do with this money and if it is merely going back to the treasury of Argentina. As indicated in

7

*EM*, the government of Argentina has the authority to control how the BCRA spends its money. *Id*. at 475. This relationship is particularly troubling since the Settlement Trust Agreement, where Argentina purportedly waived its rights to the Bond Proceeds at BNYM, may only be a technical process to circumvent this Court's jurisdiction to avoid Plaintiffs' fulfillment of their Judgments. In order to determine whether the placement and agreements regarding the Proceeds was a fraudulent conveyance, pursuant to N.Y. Debt. & Cred. Law § 278, based on the new incomplete evidence[7] and self-serving statements presented by Argentina, JPMorgan and BNYM in the Oppositions, Plaintiffs must conduct discovery, including depositions of the parties[8] involved, interrogatories and document requests surrounding the 2016 Bond Offering and in particular its Proceeds. The limited discovery requests will reasonably relate to the non-immune, attachable assets of the Bond Proceeds in the U.S. in which Argentina retains its interest pursuant

---

[7] The Settlement Trust Agreement references several "Schedules" including for how Argentina requires that the Proceeds be paid to settling bondholders that are not included in Exhibit C to Bresnahan Declaration. As throughout this litigation, Argentina is picking and choosing what it discloses to the Court and bondholders regarding its assets to avoid paying bondholders what they are owed.

[8] Although JPMorgan states that it did not retain any Proceeds for Argentina, it would be imprudent for Plaintiffs to merely rely on JPMorgan's self-serving statements of an individual located beyond this Court's jurisdiction without independently investigating. JPMorgan Br. 3-4, Declaration of Lisandro Miguens ("executed in Brazil"). Discovery on JPMorgan or the other New York-entities that participated in the 2016 Bond Offering in the U.S. would reasonably relate to attachable assets that they may hold. Furthermore, the Declaration indicates that the same entity, Deutsche Bank Securities Inc., was the "Billing and Delivery Bank" for the Bonds and Proceeds even though the first phase was in the U.S. purportedly to BNYM, while the second phase was in Argentina. This also raises questions subject to discovery of whether the Proceeds were in fact all in Argentina to avoid the anticipation of bondholders seeking attachments of the proceeds as Plaintiffs are seeking in the Motions.

to federal and New York law. *See* Fed. R. Civ. P. 69(a)(2); CPLR § 5223 (permitting broad discovery that is relevant to the judgment debtor's income and property).[9]

This Court may withhold its ruling on the Motions in order for Plaintiffs to conduct discovery surrounding them.

## CONCLUSION

For the foregoing reasons, Plaintiffs request:

a) Issuance of writs of execution and order Argentina and BNYM to turn over the proceeds from 2016 Bond Offering in order to satisfy Plaintiffs' long-standing Judgments plus post-judgment interest and legal fees.

b) Permission to Plaintiffs to seek additional discovery from Argentina, JPMorgan and BNYM to identify Argentina's bond proceeds in the U.S.

c) Restrain Argentina from removing any of the identified Proceeds in the U.S. pending exhaustion of any and all appeals that may be necessary, including to the highest court, which Plaintiffs are prepared to seek.

Dated: May 20, 2016  
       New York, New York

Respectfully submitted,

**ANDERSEN SLEATER LLC**

By: _____Jessica Sleater_____  
Jessica J. Sleater  
1345 Avenue of the Americas  
2nd Floor, Suite 2100  
New York, NY 10105  
Tel: (212) 878-3697  
Email: jessica@andersensleater.com  
*Attorney for Plaintiffs*

---

[9] This situation is distinguishable from *Rossini v. Republic of Argentina*, 453 Fed. Appx. 22, 24-25 (2d Cir. 2011) cited by Argentina because it does not involve an unknown scheme of a bond offering through intermediaries, but instead the Motions and discovery involve a known 2016 Bond Offering including its Proceeds by and for Argentina in the U.S. that are attachable assets.

9